411 So.2d 17 (1982)
Kathleen THAMES
v.
Clebert ZERANGUE, Jr. and Safeco Insurance Company.
No. 81-C-1978.
Supreme Court of Louisiana.
March 1, 1982.
Rehearing Denied April 5, 1982.
*18 Elizabeth Dugal, Lafayette, for plaintiff-relator.
Charles A. O'Brien, III of Franklin, Moore & Walsh, Baton Rouge, for defendants-respondents.
DIXON, Chief Justice.
This suit for personal injuries[1] arose when plaintiff's car was struck from the rear by Clebert Zerangue's pickup truck. The jury returned a verdict for the defendants. The Court of Appeal affirmed. 401 So.2d 648 (La.App.1981). We granted writs, and reverse.
On May 29, 1979 Zerangue was traveling in the left lane, heading south on Highway 167 approaching an intersection near Northgate Mall in Lafayette, Louisiana. He testified he was looking at a stalled car in the right lane, and failed to see plaintiff's car that had stopped for a line of traffic at the Willow Street intersection. Defendant's truck struck Kathleen Thames' car from the rear, and forced it into the vehicle ahead of her. The impact was so severe that it caused Miss Thames' seat to break loose from the car; fortunately, she was wearing a seat belt and shoulder harness. The rear end of the car was crushed so that it took fifteen minutes to extract a suitcase from the trunk. Defendant admitted to the investigating officer that he had not seen plaintiff's car until immediately prior to the collision. Zerangue had pleaded guilty to a charge of "following too close," for which he was fined $30.00 and costs.
When plaintiff got out of the car her neck hurt, and was difficult to move. She was crying and had a severe headache. After the officer completed investigation, plaintiff drove her wrecked car to work. Her employer instructed an employee, Donna Fontenot, to drive her to the hospital because she was in so much pain. At the emergency room plaintiff complained that her neck and shoulders were numb. The nurse packed sandbags around her neck to prevent movement. X-rays were taken of her neck and spine, and she was given a prescription for a pain reliever.
Plaintiff did not return to work until the second day after the accident. She tried to avoid taking the pain medication that had been prescribed, but found the medicine was necessary for her to function at work. The medicine, however, did not allow full movement of her neck. She visited an orthopedist, Dr. Cobb, the second week following the accident because of problems with her neck. She did not keep her second appointment with Dr. Cobb because her neck was feeling better two weeks later.
The jury returned a general verdict[2] for defendants despite Zerangue's admission of negligence. The verdict for defendants is clearly wrong in view of Zerangue's admission of fault. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The Court of Appeal relied on our recent decision in Napoli v. State Farm Mutual Automobile Insurance Co., 395 So.2d 720 (La.1981), and noted that we had affirmed a jury award of "$0" where plaintiff had failed to prove trauma related injuries. Napoli is distinguishable from the case at bar. In Napoli, the jury returned a verdict in favor of plaintiff, but awarded "$0" damages.[3] *19 The jury in this case rendered a general verdict in favor of defendants, and consequently assessed no damages. The verdict is clearly contrary to the law and evidence. Zerangue admitted he had caused the accident because he was following too close and failed to see the plaintiff's car in time to prevent the collision. Zerangue's uncontroverted admission of fault requires rendition of judgment in favor of plaintiff.
It is true Miss Thames did not prove that all her claimed injuries were caused by the accident, but she undoubtedly suffered pain and inconvenience from the accident. In Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967), plaintiff was involved in a rear end collision and sustained whiplash injuries. The trial judge[4] entered judgment in favor of plaintiff, but felt her injuries were greatly exaggerated; he also did not believe the testimony of plaintiff's doctor because the physician had given similar whiplash testimony in other cases. The trial judge awarded plaintiff the nominal sum of $250.00 as compensatory damages and $150.00 for medical expenses. This court, in an opinion by Justice McCaleb, found the trial judge abused his discretion by not giving credence to the physician's uncontroverted testimony, and held that an award of $1800.00 would properly compensate plaintiff for her pain and suffering.
Plaintiff is entitled to compensatory damages for inconvenience, loss of wages, medical expenses and any other damages she suffered which were caused by this accident.
In Jordan v. The Travelers Insurance Co., 257 La. 995, 1006-1007, 245 So.2d 151, 155 (1971), we held that:
"One injured through the fault of another is entitled to full indemnification for the damages caused thereby. La.Civil Code Art. 2315. Another general principle deduced therefrom and applicable here may be stated as follows:
Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all the facts and circumstances of the case. Civil Code Art. 1934(3); Brantley v. Tremont & Gulf Ry. Co., 226 La. 176, 75 So.2d 236 (1954), and decisions therein cited...."
The record shows that Safeco, defendant's insurer, paid for all plaintiff's medical expenses through August 15, 1979. The bills were previously paid by plaintiff's group health insurer, Metropolitan, and it was reimbursed by Safeco. Plaintiff does not argue that she is entitled to recover medical expenses for which she has been reimbursed. Therefore, the only medical expenses at issue are represented by the deductible portion of plaintiff's group health insurer, which amount to $126.96.
The lost wages suffered by the plaintiff because of this accident, uncontradicted by any evidence, are $528.00.
The tortfeasor takes his victim as he finds her. In Reck v. Stevens, 373 So.2d 498, 502 (La.1979), this rule was held applicable to a plaintiff who had a history of emotional problems in the following passage:
"Unquestionably, the severity and persistence of the subjective symptoms (headaches, dizziness, disorientation) in part resulted because of an underlying (but until-then controlled) emotional instability of the plaintiff, a non-specific schizophrenic process of long standing. Nevertheless, a tortfeasor takes his victim as he finds him, and he is responsible in damages for the consequences of his tort although the damages so caused are greater because of a prior condition of the victim which is aggravated by the tort. Restatement of Torts, 2d, Section *20 461; see many Louisiana cases including, e.g., Johnson v. Ceaser, 304 So.2d 855 (La.App. 4th Cir. 1974)."
Plaintiff in this case was described by her family physician, Dr. Hill, as having "psychological problems." Dr. Hill had treated her since she was twelve years old, and related that she usually had a "laundry list" of complaints. In the months which followed the accident in this case, plaintiff complained of visual problems, a swollen and painful arm, neck pain, and stomach pain.
The plaintiff had complained of visual problems and a swelling in her arm before the accident. These complaints were received by the doctors who examined her as serious complaints. She was given numerous tests, including two CAT scans, extensive x-rays, and neurological examinations, for which examinations she was hospitalized on four different occasions. She was referred by her treating physician to another physician, who in turn referred her to other physicians. She did not employ a lawyer until months after the accident, and her lawyers did not refer her to any of the physicians who testified. Among those who treated her were her family physician, an orthopedist, a neurosurgeon and a psychiatrist. Her doctor visits were frequent and her complaints were numerous.
In following up the plaintiff's complaints of stomach pain, it was learned that she had a gastric ulcer, which was treated and "cured" before the trial. The cause of the ulcer was attributable to stress. The only source of stress in the record is that which arose as a consequence of the automobile accident.
It is hard to imagine an automobile accident in which an automobile is demolished that does not cause stress to the occupant. One of Miss Thames' complaints was that, in replacing the demolished automobile with a model only one year newer, her automobile notes increased $25.00 a month. Miss Thames lived alone and her only income was her salary as a newspaper reporter. She testified that the constant press of medical bills caused her great concern, and required her to borrow money from her father and from a bank. It was brought out on cross-examination that almost all the plaintiff's medical bills were paid for her by an insurance company, and that the sums she borrowed from the bank were not attributable to medical bills.
Miss Thames countered, however, by demonstrating that she was required to pay cash for examinations and treatments, and was not reimbursed for two or three months. She apparently lived up to the limits of her modest salary.
Miss Thames' ulcer was related to the accident by the evidence. Her complaints about visual problems were only remotely related to the accident, the experts being of the opinion that they were related to a migraine condition, which was possibly affected by stress. The swelling and painful arm was not seen by physicians. One physician did notice a condition in the muscles of a hand for which he made extensive neurological tests, without a conclusion. The arm complaint, like the visual condition, was not shown by the testimony to have been caused by the accident.
Although there was some effort to prove that the plaintiff's "lifestyle" was changed for the worse as a result of the accident, the record will not support a conclusion that the plaintiff was disabled for any great length of time, nor that she was in pain and discomfort continuously. There was no evidence that the disability caused by the accident would continue past the date of trial.
Consequently, the plaintiff is entitled to a judgment in the amount of $3000.00 for her pain, suffering and inconvenience, which should be added to the $126.96 listed above for uncompensated medical expenses and $528.00 for lost wages.
For these reasons, the judgments of the lower courts are reversed, and there is now judgment in favor of plaintiff, Kathleen Thames, and against the defendants, Clebert Zerangue, Jr. and Safeco Insurance Company, in the amount of $3654.96 with 10% interest from the date of judicial demand until paid, and all costs.
*21 DENNIS, J., concurs with reasons.
WATSON, J., concurs and assigns reasons.
MARCUS, J., dissents.
BLANCHE and LEMMON, JJ., dissent and assign reasons.
DENNIS, Justice, concurring.
I respectfully concur. I agree that the verdict was contrary to the evidence. The defendant's admission of fault is merely one item of evidence, however, and should not be viewed as conclusive proof.
WATSON, Justice, concurring.
This court erred in reaching precisely the opposite result on essentially identical facts in Napoli v. State Farm Mut. Auto. Ins. Co., 395 So.2d 720 (La., 1981), see dissent. Now we have a correct result which has the effect of destroying whatever precedential value Napoli may have had. Quaere: what does plaintiff Napoli think?
I respectfully concur.
BLANCHE, Justice (dissenting).
I respectfully dissent.
The opinion is correct in holding that the plaintiff was entitled to a judgment, especially since the jury heard the defendant, Zerangue, admit his negligence. The opinion is wrong in awarding damages.
Surely the jury would know plaintiff would not have to prove that which was admitted. This left for jury consideration the only remaining issuenamely, the plaintiff's entitlement to compensatory damages. The jury rejected plaintiff's claim for damages and awarded her nothing when they found in favor of the defendant.
The court of appeal, in an excellent opinion by Judge Cutrer, exhaustively examined the evidence on the question of whether plaintiff established that she suffered injuries as a result of the accident. That court found that the evidence would support a finding that plaintiff's complaints were not related to the accident. It also stated, "The appeal court should not disturb the findings of the trier of fact in the absence of manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973). Manifest error means clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978)."
I would not substitute our judgment on the issue of damages and resolve the matter as was done in Napoli v. State Farm Mutual Automobile Ins. Co., et al, 395 So.2d 720 (La.1981).
LEMMON, Justice, dissenting.
If the jury's verdict in favor of defendants was necessarily based on a factual finding that plaintiff sustained no damages whatsoever (or that defendants were not negligent), then the verdict would have been clearly erroneous. However, defendants paid almost $4,000 of plaintiff's damages prior to suit, and plaintiff's suit demanded the damages caused by defendants' fault in excess of that amount.[1] I cannot say on this record that the jury was clearly wrong in deciding that plaintiff failed to prove that her damages resulting from the accident exceeded $4,000.[2] The judgments based on that verdict should be affirmed.
NOTES
[1] Settlement was reached for the property damage suffered by plaintiff. Safeco, Zerangue's insurer, paid plaintiff $3800.00 for her 1978 Toyota that was a total loss as a result of the accident.
[2] The verdict stated the following:

"We, the Jury, find in favor of defendant, CLEBERT ZERANGUE, JR., and SAFECO INSURANCE COMPANY, and consequently assess no damages."
[3] In Napoli v. State Farm Mutual Automobile Insurance Co., 395 So.2d 720 (La.1981), the jury returned this verdict:

"Judgment in favor of plaintiff, Peggy J. Napoli, and against the defendants in the amount of $0."
[4] The trial judge in Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967) was John A. Dixon, Jr.
[1] In this situation, in which defendants paid plaintiff the amount of damages that defendants believed was due, a verdict in favor of the defendants cannot be regarded as a determination that plaintiff has sustained no damages whatsoever.
[2] It is of no consequence that defendants paid the sums to plaintiff as reimbursement for special damages.

There was only a general verdict, and there were no special interrogatories requiring the jury to award separate amounts for each item of damages claimed. The jury could well have decided on this record that defendants overpaid plaintiff for property damages or medical expenses (or both) caused by this accident and could have attributed to general damages part of the amounts paid as special damages.