598 So.2d 654 (1992)
Gregory Wayne STOUTES, Plaintiff-Appellant,
v.
GENERAL MOTORS ACCEPTANCE CORPORATION, et al., Defendants-Appellees.
No. 90-1164.
Court of Appeal of Louisiana, Third Circuit.
April 16, 1992.
Michael H. Colvin, Grady M. Spears, Lafayette, for plaintiff-appellant.
Martin, Taulbee, Rowe, Bares & Oliver, Edward O. Taulbee, IV, Lafayette, for defendants-appellees.
Before GUIDRY and YELVERTON, JJ., and HOOD, J. Pro Tem.
GUIDRY, Judge.
Plaintiff, Gregory Wayne Stoutes, was involved in an automobile accident which occurred on August 3, 1986 in the City of *655 Lafayette. Plaintiff was injured while riding as a guest passenger in a vehicle owned and driven by Mike Nails which was rear-ended by an automobile driven by Sandra Nelson. Stoutes initially named as defendants, General Motors Acceptance Corporation, lessor of the Nelson vehicle; Sandra M. Nelson; Security National Insurance Company, Nelson's insurer; The Travelers Companies, Nails' uninsured motorist carrier; and, Louisiana Farm Bureau Mutual Insurance Company (Farm Bureau), plaintiff's uninsured motorist carrier. Prior to trial, Stoutes received $6,666.67 from Security National, $10,000.00 from Travelers and $5,000.00 as an advance from Farm Bureau. Subsequently, all defendants except Farm Bureau were dismissed. The case was tried to a jury subject to the following pre-trial stipulations:
1. Farm Bureau's liability was admitted;
2. The jury would determine a damage award without being informed of the prior payments made by Security National, Travelers and Farm Bureau; and,
3. Any amount awarded in judgment by the jury in favor of plaintiff would be subject to a credit for the total amount ($21,666.67) of the prior payments.
After a three day trial, the jury awarded Stoutes total damages of $10,000.00, consisting of $2,500.00 in general damages; $5,000.00 in past medical expenses; and, $2,500.00 in future medical expenses. Judgment was rendered and signed on April 11, 1990 dismissing plaintiff's action with full prejudice because the jury's award was less than the stipulated credit. At a separate hearing, the trial court assessed all costs of the proceedings against defendant Farm Bureau.
Plaintiff appealed urging that the jury abused its discretion in awarding an amount he characterized as unreasonably insufficient. Farm Bureau answered plaintiff's appeal seeking a reversal of the assessment of costs against it and the taxing of all costs at the trial level and on appeal against Stoutes.

FACTS
On August 3, 1986, at approximately 2:00 p.m., plaintiff, Gregory Stoutes, Mike Nails and Vernon Padgett were traveling in Nails' Volvo in a southerly direction on Guilbeau Road in the City of Lafayette. At an intersection Nails stopped his car in the left lane while waiting for a break in the oncoming northbound traffic to make a left turn from Guilbeau Road. A few seconds later, Nelson's Toyota slammed into the rear section of the Volvo. The force of impact sent the Volvo forward approximately 170 feet. Nails' car suffered extensive damage and, according to Nails, was declared a total loss by his insurance company.
Plaintiff Stoutes testified that, initially, he declined medical treatment but, as the day progressed, his neck became increasingly stiff. He sought treatment the next day from Dr. Gail Letterle, a chiropractor. Stoutes had previously suffered a back injury in an offshore accident while working for Gulf Oil Corporation in 1983, for which he had been treated by Dr. Letterle. However, Stoutes maintained that the severity of the 1983 injury was confined mainly to his lower back with some associated pain to the lower left side of his neck. According to Stoutes, the injury suffered in the collision with Nelson originated in the right side of his neck and progressed to his temporomandibular joint (TMJ). Stoutes saw numerous physicians for his cervical and TMJ pain, and underwent splint therapy for the TMJ disfunction for approximately one year. Associated with these complaints of physical pain were emotional disturbances and depression for which Stoutes sought psychological counseling.
Stoutes stated that, as a result of the injuries caused by this accident, he was forced to close his business because of his inability to handle the work. He had begun Solar Shield, a window tinting business, approximately two months prior to the accident. He claimed that, after the accident, he was incapable of doing the work because of constant pain flare-ups. Stoutes closed the business on August 27, 1986. Shortly thereafter he enrolled in *656 Southern Technical College and graduated in October, 1988 with an associate degree in electronics. At the time of trial, Stoutes was working for Siemens Medical Systems in Atlanta, Georgia as a CT scan field service engineer. Stoutes quit TMJ splint therapy in January 1989 and has not since sought treatment for his TMJ disfunction. Stoutes stated that he continues to have occasional pain in his neck and jaw, for which he alternately takes Ibuprofen and Excedrin for relief.
Stoutes admitted on cross-examination that he had been totally disabled by the 1983 offshore accident. However, he further explained that he was only technically "disabled" in the sense that he was unable to return to the type of work that he had been doing for Gulf. He stated that, following the 1983 accident, he agreed to a disability retirement status in order to collect benefits which had accrued during the period of his employment. In differentiating between this injury and the previous one, Stoutes explained that the pain associated with the previous injury was isolated below the base of his neck while the pain associated with this injury was mainly concentrated above the base of his neck. He denied that his injuries pre-existed this accident and that the TMJ condition was caused by chiropractic adjustments after the accident.
Dr. Letterle diagnosed an acute, moderate, post-traumatic cervical sprain/strain with an abnormal flattening of the cervical curve. He treated the plaintiff for three months following the accident. He performed chiropractic adjustments on Stoutes, but stated that he never used Stoutes' jaw to manipulate his neck. Stoutes never complained to him that any chiropractic maneuver caused his jaw pain. In addition, Dr. Letterle stated that cervical strain is normally closely associated with and can lead to jaw problems. In November 1986, Stoutes was treated three times by another chiropractor, Michael Cavanaugh, whose diagnosis was similar to that of Dr. Letterle.
Dr. Stuart Phillips, an orthopedic surgeon, diagnosed a cervical internal disc derangement with nerve fiber irritation and a small ligament tear. Magnetic Resonance Imaging (MRI) and CT scans of the cervical area were normal. He testified that plaintiff had a "10% impairment of function" due to his neck injury. Dr. Michael Heard, also an orthopedic surgeon, examined plaintiff at the request of Farm Bureau. Dr. Heard diagnosed post-traumatic neck, mid back and low back pain caused by a soft tissue injury and a mild muscle strain in the neck. He found no objective evidence of injury and imposed no work restrictions on Stoutes except the prohibition of overhead lifting. Once again, MRI and CT scans were normal.
Stoutes also saw several specialists for his TMJ disfunction. Dr. Olin Desonier, a dentist specializing in the treatment and management of TMJ pain, prescribed splint therapy in an effort to realign Stoutes' jaws. According to Dr. Desonier, plaintiff suffered a bilateral disc displacement of both TMJs. The splint therapy, which in and of itself is painful, resulted in some improvement in the plaintiff's condition. Dr. Desonier approximated the total future medical cost to correct Stoutes' jaw and associated dental problems at between $3,000 and $5,000. Stoutes also consulted Dr. H.A. McConnell, another dentist, who stated Stoutes told him that his TMJ pain began after his jaw popped during a chiropractic adjustment. In his opinion, this was the cause of plaintiff's TMJ disfunction. Stoutes denied telling Dr. McConnell this. Dr. Randolph Malloy, an oral and maxillofacial surgeon, confirmed the diagnosis of Dr. Desonier. He found positive pain responses, especially in plaintiff's right TMJ.
Dr. Lyle LeCorgne, Ph.D., a clinical psychologist, testified that the physical injuries suffered by Stoutes caused severe emotional stress and depression. He deduced that the emotional problems were caused by the fact that Stoutes, once relatively self-sufficient, was, after the accident, having to rely to a much greater extent upon others. The accident presented Stoutes with the first situation in his life in which he was unable to cope with his problems on his own. Stoutes was prone *657 to emotional outbursts and, at times, expressed suicidal ideations. He also felt guilty for subjecting his family to his emotional outbursts and problems. Family members including his wife, father and mother, corroborated the psychologist's testimony. Dr. LeCorgne stated that Stoutes' emotional recovery was closely tied to his physical recovery.
Plaintiff also asserts that the jury abused its discretion in not awarding past lost wages and in awarding unreasonably inadequate amounts of recovery in general damages, past medical expenses and future medical expenses.

LAW AND ANALYSIS
Presumably the jury concluded that Stoutes proved by a preponderance of the evidence that both his cervical and TMJ injuries were caused by the automobile accident. We make this assumption on the basis of the jury's award, including that for past and future medical expenses. However, in any event, our careful examination of the record prompts the conclusion that plaintiff did establish, by a preponderance of the evidence, that both of his claimed injuries were caused by the accident.
The principles applicable to appellate review of quantum awards are well settled. As stated in Chatelain v. United States Fidelity and Guaranty Company, 495 So.2d 379 (La.App. 3rd Cir.1986), writ denied, 498 So.2d 756 (La.1986):
"... Before the appellate court can disturb a quantum award made by the trier of fact, the record must clearly reveal that the trier of fact abused its great discretion in making the award. The question to be answered on the appellate level is whether the trier of fact's award can be reasonably supported by the record, not whether a different award may have been more appropriate. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Browning v. Commercial Union Ins. Co., 476 So.2d 559 (La.App. 3rd Cir.1985); Sikes v. McLean Trucking Co., 383 So.2d 111 (La. App. 3rd Cir.1980).
In reviewing an award of damages to determine whether it is inadequate or excessive, the appellate court must look at the individual circumstances of the case before it. Only after a close analysis of the facts reveals a clear abuse of discretion of the trier of fact may the award of damages be altered. Reck v. Stevens, 373 So.2d 498 (La.1979); Hefner v. B.J. McAdams, Inc., 487 So.2d 505 (La.App. 3rd Cir.1986)."
The jury did not award lost wages to Stoutes. Apparently, the jury was not convinced that the closure of Stoutes' business was a direct result of the accident. It is the plaintiff's burden to prove, by a preponderance of the evidence, the causal connexity between the accident and the damages claimed. White v. Government Employees Insurance Company, 527 So.2d 39 (La.App. 3rd Cir.1988), writ denied, 528 So.2d 153 (La.1988), citing Coleman v. Victor, 326 So.2d 344 (La.1976). The issue is whether this factual finding is clearly wrong.
Stoutes ceased to operate Solar Shield on August 27, 1986, 23 days after the accident. He worked a total of nine days during the entire month of August. According to Stoutes, he closed the business because he could no longer perform the window tinting work due to headaches and pain flareups. However, the record is devoid of any corroborating medical testimony causally connecting the cessation of Solar Shield's operations with the injuries sustained by Stoutes in the accident. Plaintiff presented the testimony of Dr. Pettingill, an expert economist, who stated that the closure of Solar Shield caused Stoutes to lose a substantial amount of income over the 2.23 year period during which he was not employed. The jury, in its great discretion, could reasonably have determined that plaintiff failed to prove by a preponderance of the evidence that the closure of Solar Shield was causally linked to the injuries sustained in this accident. We cannot say that this factual finding is clearly wrong.
On the other hand, given the particular facts and circumstances of this case, we *658 conclude that the amounts awarded by the jury to plaintiff for past and future medical expenses and general damages are inadequate and should be increased.
The jury awarded Stoutes $5,000.00 for past medical expenses. The record reveals that Stoutes incurred $10,047.00 in medical expenses prior to trial. Plaintiff documented these medical expenses with invoices and receipts. All practitioners that treated Stoutes stated that their treatments were medically necessary and that the charges were reasonable. Therefore, Stoutes is entitled to an award of $10,047.00, the entire amount of past medical expenses incurred.
The jury also awarded Stoutes $2,500 for future medical expenses. There is no evidence in the record to support any award for future medical expenses in connection with plaintiff's neck injury. However, the record reveals that future corrective procedures for dental work to correct the TMJ disfunction will cost $3,000.00-$5,000.00. In addition, Dr. Malloy testified that Stoutes would need trigger point injections into his TMJs costing $600.00-$700.00. As such, we find that the lowest amount the jury could have reasonably awarded for future medical expenses was $3,600.00. Accordingly, we will increase the future medical expenses award from $2,500.00 to $3,600.00.
The jury awarded $2,500.00 in general damages which, according to the verdict form, includes "past and future pain and suffering, mental anguish, inconvenience, psychological damages and disability". The plaintiff suffered a cervical sprain/ strain and TMJ disfunction. The pain associated with these injuries was moderate and lasted for an extended period of time. In fact, Stoutes stated that the pain was continuing, albeit to a lesser degree, at the time of trial. The injuries sustained also caused psychological problems described as depression and emotional instability. The medical testimony corroborated Stoutes' subjective complaints of pain. The splint therapy he underwent to correct his TMJ disfunction was, in itself, a painful process.
Under these circumstances, we conclude that the jury abused its discretion by awarding only $2,500.00 in general damages. Having found an abuse of discretion, we have examined prior awards in similar cases to determine an appropriate award in this case. Coco, supra; Barzare v. Transit Casualty Company, 539 So.2d 708 (La.App. 3rd Cir.1989). Our survey of prior awards prompts our conclusion that the lowest possible awards which were reasonably within the jury's discretion are $5,000.00 for the cervical sprain/strain; $10,000.00 for the TMJ disfunction; and, $2,500.00 for plaintiff's psychological and emotional problems. Accordingly, we will increase the general damage award to $17,500.00.
For the above and foregoing reasons, the judgment of the trial court in favor of plaintiff, Gregory Wayne Stoutes, is amended so as to increase same from $10,000.00 to $31,147.00, subject to the stipulated credit of $21,666.67, for a final net award of $9,480.33. In all other respects, the judgment appealed from is affirmed. All costs on appeal are assessed against defendant, Louisiana Farm Bureau Mutual Insurance Company.
AFFIRMED AS AMENDED.